NATIONAL FIRE INSURANCE COMPANY *v.* O'BRYAN.

Opinion delivered April 29, 1905.

1.  FIRE INSURANCE—APPRAISER.—The question whether a person selected by one of the parties as appraiser under the appraisal clause of a policy of fire insurance is "competent and disinterested" is for the jury. (Page 201.)

2.  FIRE LOSS—QUALIFICATION OF APPRAISER.—The fact that one selected by the insured as appraiser had previously been employed by the insured to make an estimate of the amount of loss sustained is a fact to be considered by the jury in determining whether he was sufficiently free of bias and prejudice to be a disinterested witness, but it did not, of itself, disqualify him. (Page 201.)

3.  INSTRUCTION—SINGLING OUT FACT—INVITED ERROR.—Appellant cannot complain that an instruction was given by the court which singled out a particular fact if an instruction asked by him alleged the converse of the instruction given, and singled out the same fact. (Page 204.)

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Affirmed.

STATEMENT BY THE COURT.

This was an action on a fire insurance policy, and the insured, the Misses O'Bryan, recovered. The company, after the fire, called into operation the appraisement clause of the policy. The insured selected T. W. Gibbs as appraiser, and the company selected Beattie, and an agreement was drawn and signed by the company, but it was not consummated. Gibbs made an estimate of the injury to the building, at the instance of Charles O'Bryan, the brother and representative of the Misses O'Bryan, and was paid for his services. This was prior to his selection as appraiser. Beattie, the other appraiser in the unconsummated written submission, had made a similar estimate at the instance of the company which differed in amount but slightly from Gibbs's. After the failure of this agreement the insured, when called upon to name an appraiser under the terms of the policy, again named Gibbs, and then the company objected to him as not being "competent and disinterested." The insured insisted on Gibbs, and the company would not accept him. Gibbs was a bidder with several other contractors for the erection of four houses to be built by Charles O'Bryan, and was the lowest bidder, and got the contract, and built the houses. At the time he was nominated as appraiser, he was a prospective bidder. He was an experienced contractor and builder.

The clause in the policy in question is as follows: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss, the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expenses of the appraisal and umpire."

The court instructed the jury as follows:

"1. If you find from the evidence that the plaintiffs, upon the demand of the defendant for an appraisement of the loss

under the provisions of the policy, notified defendant that they would comply with said demand, and thereupon named T. W. Gibbs as the appraiser for them, and that said Gibbs was competent and disinterested, and that the plaintiffs were at all times ready to proceed with the appraisement with Gibbs as such appraiser, and defendant refused to proceed with such appraiser, then you will find that plaintiffs have complied with the provisions of the policy as to the appraisement.

"2. The mere fact that T. W. Gibbs knew the premises, and had made an estimate of its value, did not of itself render him incompetent or disqualified to act as an appraiser, under the provisions of the policy."

The court refused to give the following instruction requested by the company:

"7. If you believe from the evidence that T. W. Gibbs, the person offered as an appraiser, had already made a computation of the loss at the request of the assured, then the court tells you that he was not a disinterested person within the meaning of the policy, and that the defendant had the right to decline to agree to said person as one of the appraisers."

The court gave, at the request of the company, the following instruction:

"2. You are instructed that defendant had the right to insist upon a competent and disinterested appraiser being chosen by plaintiffs, and to object to one if he was incompetent or interested; and that it devolved upon plaintiffs to appoint some person who was competent and disinterested. If, therefore, you find from the evidence that plaintiffs offered as their appraiser a person who was incompetent or interested within the meaning of those terms explained to you, and you find that defendant objected to him on either of those grounds, and that plaintiffs refused or failed to choose another person as an appraiser who was competent and disinterested, and thus proceed to comply with said provision as to appraisal, you will find for the defendant."

*Ashley Cockrill,* for appellant.

*Wood & Henderson,* for appellees.

Gibbs was not disqualified to act as an appraiser under the provisions of the policy. 129 Mass. 345; 30 So. 257; 4 N. E. 745; 51 S. W. 123. If indeed he was, the appellant waived his disqualification. 32 L. R. A. 172; 26 L. R. A. 623; 51 N. W. 123; 21 S. W. 207; 62 N. W. 423; 21 S. E. 303; 20 S. E. 477; 29 N. E. 844; 8 Atl. 586.

HILL, C. J., (after stating the facts.) The proper construction to place on the term "competent and disinterested appraiser," within the meaning of the appraisal clause of a standard fire insurance policy, is the sole question presented to the court in this appeal by the appellant.

The appellant contends that if the person offered as appraiser had already made a computation of the loss at the request of the insured he was not a disinterested appraiser. The argument is that he must come to the discharge of his duties without preconceived opinions as well as without bias and prejudice.

The appellee contends that appraisers are not selected like jurors, but their experience and information of the subject-matter of the appraisal is a qualification, rather than a disqualification.

The authorities are practically uniform in holding that the question whether the selected person is "competent and disinterested" is a question for the jury. *Bishop* v. *Agricultural Ins. Co.,* 29 N. E. Rep. 844; *Bradshaw* v. *Agricultural Ins. Co.,* 137 N. Y. 137; *Bullman* v. *North British & Mercantile Ins. Co.,* 159 Mass. 118; *Uhrig* v. *Williamsburg Fire Ins Co.,* 4 N. E. Rep. 745; *Bangor Sav. Bank* v. *Niagara Fire Ins. Co.* 20 L. R. A. 651; *Meyerson* v. *Hartford Ins. Co.,* 39 N. Y. Supp. 329; 4 Joyce on Ins., § 3242.

Therefore it follows that the court was correct in submitting this question to the jury.

That leaves for consideration only the question whether the court was right in telling the jury in the second instruction that the mere fact that Gibbs knew the premises and made an estimate of its value did not disqualify him, and in refusing the seventh instruction requested by appellant to the effect that such would disqualify him.

Mr. Ostrander says: "Persons will be disqualified to act as arbitrators who are interested in the subject of the inquiry, or if they have already made computation of the loss at the request of either party." Ostrander on Fire Insurance, § 260. The only authority he cites to support this statement is *Bradshaw* v. *Agricultural Ins. Co.* 137 N. Y. 137. The opinion in that case was written by Mr. Justice PECKHAM, now of the Supreme Court of the United States, and it does not touch the point last mentioned in the above quotation from Ostrander. The appraiser selected in that case had been in the employ of the company for similar services about ten times in two years, and in the employ of other companies very frequently, and regarded his duties as appraiser to be that of specially looking after the interests of the companies in such matters, and these facts were unknown to the other party. The question whether he was disinterested had been properly submitted to the jury, which found he was not a "disinterested appraiser," and the court held the evidence justified the verdict. Mr. Justice PECKHAM said: "While it may be true that in the appointment of these appraisers each party nominates some one who may be supposed to be friendly to the side nominating him, yet he should at the same time be disinterested, or, in other words, fair and unprejudiced. The duties of these appraisers are to give a just and fair award, one which shall honestly and fairly represent the real loss actually sustained by the fire; and it is not the duty of either appraiser to see how far he can depart from that purpose and still obtain the consent or agreement of his associate, or, in case of his refusal, then of the umpire. It is proper and to be expected that all the facts which may be favorable to the party nominating him shall be brought out by the appraiser, so that due weight may be given them, but the appraiser is in no sense, for the purpose of the appraisal, the agent of the party nominating or appointing him, and he remains at all times under the duty to be fair and unprejudiced, or, in the language of the policy, disinterested." This case was followed in *Kaiser* v. *Hamburg-Bremen Ins. Co.,* 69 N. Y. Supp. 344.

In considering this clause, in an Iowa case, the court said: "They were to ascertain and appraise 'the sound value of, and the loss upon, the property damaged.' To appraise is to estimate value, and we have no doubt that these arbitrators or appraisers

were selected to make an appraisement, and not to hear evidence. The men selected by the parties were experienced contractors and builders, and the terms of the contract clearly indicate that an appraisal, only, was contemplated. * * * We are not to be understood as holding that such arbitrators may not take evidence." *Vincent* v. *German Ins. Co.,* 120 Ia. 272. The Kentucky court said: "While the facts are yet fresh, and the damaged articles are to be seen, it is reasonable to suppose that impartial men, familiar with the character and value of such goods in that community, can, by personal inspection, and by the use of their judgments and experience, more nearly come to a true valuation than any number of men not on the scene, inexperienced in every probability in the business of valuing such articles, trying to get at the values upon testimony often of biased or incompetent or careless witnesses." *Continental Ins. Co.* v. *Vallandingham,* 76 S. W. Rep. 22. The Maine court thus described the work of these appraisers: "This duty is to be performed by the appraisers mainly by the aid of a personal examination of the premises, and an application of their personal knowledge. They are not expected to hold formal sessions of court to determine an entire controversy after hearing pleadings, evidence, and argument. Their proceedings resemble more the process of taking expert testimony. Whether mere valuers or appraisers thus appointed for such a purpose can be deemed arbitrators in any proper sense or for any purpose, there is no occasion to decide. The authorities are not in harmony upon the subject. See Morse, Arb. & Awards, 38, 42, and cases cited. It is not necessary to follow the courts in their ingenious efforts to trace, for all cases, a line of distinction between a mere appraisement and an ordinary submission to arbitration. The result may be that such appraisers are properly considered arbitrators for some purposes, but not in all respects. All are invested with *quasi*-judicial functions, which must be discharged with absolute impartiality, without the improper interference of either party or undue influence from any source. But appraisers may be said to act in the twofold capacity of arbitrators and experts. In their character of experts they will not only give effect to opinions based directly on their personal experience and knowledge, but also opinions founded in some measure upon information

which may not be so direct and original as to be competent in itself as primary evidence." *Bangor Savings Bank* v. *Niagara Fire Ins. Co.,* 20 L. R. A. 650.

Nothing can be added to this excellent and fair statement of the status of appraisers selected under this clause.

Applying these principles to the facts of this case: Gibbs was an experienced builder and contractor of Hot Springs, and had made as such an estimate of the injury to the property, for which he had been paid prior to his selection as appraiser. The fact that he had made such estimate under the employment of the insured was a fact to be considered by the jury on the issue whether he was sufficiently free of bias and prejudice to be a disinterested party in the appraisement. The fact that he had an intimate knowledge of the subject-matter, and on that account a preconceived opinion, did not of itself disqualify him, because it was such knowledge and such experience which made him the better qualified to ascertain the true value if he was free from bias and prejudice. In other words, this preconceived opinion as an expert derived from personal inspection was not a disqualification as an appraiser.

Each side singled out this question and asked an instruction on it. The court gave a correct statement of the law in the second instruction that this fact did not of itself disqualify. The company in its correspondence prior to the suit and in the suit contended it did disqualify, and asked an instruction to that effect, and therefore it cannot complain that this fact was singled out in this instruction. It would have been better to have added to this instruction that this fact, and receiving pay for making the estimate, and all other circumstances were to be taken into consideration in passing upon the question; but such a modification was not asked, and the instruction is correct as it stands, and only objectionable for singling out the one fact, but of that appellant cannot complain.

It is unnecessary to discuss, whether under the facts of the case, the company was estopped to question Gibbs's qualifications, having once offered to accept him.

The judgment is affirmed.

Mr. Justice McCULLOCH not participating.