## CHARLESTON.

ARTHUR B. BEAUMONT *v.* HAZEL ELIZABETH BEAUMONT

(No. 6373)

Submitted January 23, 1929. Decided January 29, 1929.

*C. W. Cramer,* and *Wm. T. George,* for appellant.
*Donley & Hatfield* and *Robert T. Donley,* for appellee.

WOODS, PRESIDENT:

This appeal involves the custody of an infant son. Arthur B. and Hazel Elizabeth (Campbell) Beaumont, after their marriage, February 5, 1922, made their home in Morgantown, in a house occupied by the former's father, Percy J.

Beaumont. Mrs. Beaumont left this home on September 2, 1926, and has not resided or cohabited with her husband since that date. Suit was instituted against the wife for divorce in December of the same year, on the charge of desertion, and a decree entered on April 26, 1927, granting the plaintiff a divorce from bed and board and also awarding him temporary custody of the child, which was then four years of age. On December 5, 1927, the custody of the child was awarded to the mother until March 3, 1928, the decree reciting that it appeared that she was a suitable person to have such custody. In the spring of 1928 depositions were taken by both parties relative to the competency of each to have control of the child, and on May 18, 1928, the circuit court awarded the custody to the mother from June 1,' 1928, until September 1, 1928, and to the father from September 1, 1928, to June 1, 1929, with the further provision that such division of custody should continue from year to year. It is from that decree that the mother prosecutes this appeal.

A court of equity has inherent and statutory power in a divorce proceeding to award to either party the custody, care and maintenance of the child, as the welfare of the child demands, and may from time to time revise or alter its decree in that regard as the circumstances of the parents and the welfare of the child may dictate. *Boos* v. *Boos*, 93 W. Va. 727. In awarding custody, the paramount and controlling factor is the welfare of the child. *Pierce* v. *Jeffries*, 103 W. Va. 413; *Connor* v. *Harris*, 100 W. Va. 317; *Boos* v. *Boos*, *supra*; *Norman* v. *Norman*, 88 W. Va. 640; *Cariens* v. *Cariens*, 50 W. Va. 118; *Cunningham* v. *Barnes*, 37 W. Va. 746; *Green* v. *Campbell*, 35 W. Va. 698.

The appellant is the daughter of Dr. and Mrs. William A. Campbell of Belington. While her parents do not appear to have the means which the Beaumonts have, yet they own their own home, and, like the Beaumonts, stand well in the community in which they reside. The Beaumonts are engaged in the manufacture of glass in the city of Morgantown. Both are away from home some eight or ten hours a day. So, the child, while in the custody of its father, was cared for during work hours by Agnes Gallagher, age twenty-one years, a

domestic, who bears a good reputation. She seems willing to care for the child as best she knows how. The appellant, who is a graduate of the West Virginia University, was prior to her marriage a teacher in the high school at Morgantown. Since the divorce, she has been teaching in the high school at Belington. During her absence, while the child was under her control, it was cared for by Dr. and Mrs. Campbell, both of whom now express themselves as being willing, anxious and able to cooperate with their daughter in the care and education of the child.

Arthur Beaumont testifies that his wife is lazy, unclean, a poor housekeeper, a poor cook, has bad table manners, and is neglectful of the child. His testimony is supported by that of his father, but by no other witness, except that Agnes Gallagher, who was with the family for two years before the separation, says that Mrs. Beaumont admitted being lazy and that she was not much of a housekeeper. The other witnesses who know Mrs. Beaumont find no such fault with her, and those who have had occasion to observe the conduct and appearance of the child testify that its mother is not only a fit, but, owing to the child's age, the proper person to have control of it. Two disinterested witnesses noticed a very decided impairment in the child's manners after one of the periods in which it was left with the father. The record shows that Dr. and Mrs. Campbell and Mrs. Beaumont take an active part in the church work, the latter teaching in the Sunday School.

Both parents express an anxiety in regard to the welfare of their child, and each believes that he or she will be best able to see that it is reared in the best possible manner and given advantages according to their station in life. There is no doubt but that both parents love the child dearly and would endeavor to care for it the best they know how. This Court has repeatedly recognized that so far as a child, particularly one of tender years, can be said to have an owner, the mother is the real owner thereof, and that, where no injury or disadvantage will result to the child, the feelings of the maternal parent must be given consideration. *Norman v. Norman, supra.*

But it is contended by the appellee that although the paramount consideration is the welfare of the child, in awarding its custody, the court leans to favor the innocent party, the one without fault. *Cariens* v. *Cariens, supra; Owens* v. *Owens,* 96 Va. 191; 9 R. C. L. 476; 2 Bishop, Mar. Div. & Sep., §§ 1190, 1191. The wife as a housekeeper and cook evidently did not come up to her husband's expectations, for we have the latter's statements that she followed him around so closely for the first few days after they were married that he ordered her to get busy or he would send her back to her former rooming place; and that he told her that his father came first in his affections. This latter statement was made, he states, "After I found what I got." Quarrels ensued until the night before she left, at which time, from the statements of the husband and his father, and also from testimony of appellant, which is not denied, it appears that the husband and wife had a quarrel about the latter's failure to bathe the baby. Following the quarrel Arthur's father informed him, as he had several times before, that Arthur and his wife could get out or that he, the father, would go. Arthur replied to his father, "No, I won't live with her here, and the sooner she gets out the better it will please me." Mrs. Beaumont overheard this conversation and called to the father and son that there was no use for them to leave, that she would leave. According to Arthur, he replied to her, "All right, get out and stay out." He also says he "told her where to head in at—told her how lazy she was." She left the home the following morning taking the child with her. This evidence shows clearly that the husband was as much at fault in bringing about the separation as was the wife. He clearly encouraged and assented to his wife's desertion. *Nunn* v. *Nunn,* 101 W. Va. 636; *Crouch* v. *Crouch,* 78 W. Va. 708, 712; *Tillis* v. *Tillis,* 55 W. Va. 198, 199; *Bacon* v. *Bacon,* 68 W. Va. 747; *McCoy* v. *McCoy,* 74 W. Va. 64; *Reed* v. *Reed,* 62 Ark. 611, 613; *Herold* v. *Herold,* 47 N. J. Eq. 210, 213.

As a culminating fact, it is apparent that if the father obtains the legal custody, by force of circumstances the child will be given over to the care of a domestic, who is not bound to the child by ties of blood. On the other hand, if the

mother be awarded the custody, the child will either be under the direct supervision of its mother, or its maternal grandparents, who are naturally attached to it.

We are of the opinion that the best interests of the child, at its present age, will be subserved by leaving it with its mother. The decree of the circuit court is therefore reversed and a decree entered here awarding the custody to the mother.

*Reversed and rendered.*